**Supporting Documents**

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published In** *The Wall Street Journal*) **- Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**June 2, 2004**
[Date]                                    [City]                                    [State]

**145 BEACON HILL RD, MORGANVILLE, NEW JERSEY 07751**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S $   **448,000.00**   (this amount is called "Principal"), plus interest, to the order of Lender  Lender is

**LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**

I will make all payments under this Note in the form of cash, check or money order

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder "

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     **6.250**     %  The interest rate I will pay may change in accordance with Section 4 of this Note

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month

I will make my monthly payments on the first day of each month beginning on   **August 1 , 2004**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal  If, on   **July 1, 2034**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at   **LEHMAN BROTHERS BANK, FSB**
**400 PROFESSIONAL DRIVE, SUITE 500, GAITHERSBURG, MD 20879**

or at a different place if required by the Note Holder

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U S $   **2,758.42**   This amount may change

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN** *THE WALL STREET JOURNAL*) **-** Single Family - **Fannie Mae UNIFORM INSTRUMENT**

**VMP-838N** (0210)                    **Form 3520 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4                              Initials



## · 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **July, 2014**                    , and on that day every **6th** month thereafter  Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U S  dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 25 HUNDREDTHS**                  percentage points (                **2.250**      %) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than            **12.250**            % or less than                **2.250**        %  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO**                    percentage point(s) (                **2.000**      %) from the rate of interest I have been paying for the preceding            **6**            months  My interest rate will never be greater than ·          **12.250**        %

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then. (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01

Initials *PDP*

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder The amount of the charge will be **5.00** % of my overdue payment of principal and interest I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law Those expenses include, for example, reasonable attorneys' fees

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note

### 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

### 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note Some of those conditions read as follows

**Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)          _____ (Seal)
RITA  IENCO-PLAZA                     -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                              -Borrower

*[Sign Original Only]*



PAY TO THE ORDER OF
*Lehman Brothers Holdings, Inc.*
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB
BY:
JULIANNA TUCKER
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.
BY:
RALPH A. LENZI III
AUTHORIZED SIGNATORY

## ADDENDUM TO NOTE

This addendum is made   **June 2 , 2004**   and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date

The property covered by this addendum is described in the Security Instrument and located at
   **145 BEACON HILL RD , MORGANVILLE , NEW JERSEY 07751**
### AMENDED PROVISIONS
   In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
   **Limits on Interest Rate Changes**
   The interest rate I am required to pay at the first Change Date will not be greater than   **12.250** % or less than **2.250**%   Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **TWO**   percentage point(s) (  **2**   %) from the rate of interest I have been paying for the preceding six (6) months  My interest rate will never be greater than   **12.250**%  My interest rate will never be less than   **2.250**   %

### UNIFORM SECURED NOTE
   This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions read as follows

   **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

   If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

In Witness Thereof, Trustor has executed this addendum

Witness   *Donald L. Minassian*

6/2/04
Date

RITA IENCO-PLAZA

_____
Date

_____
Date

_____
Date

_____

_____

_____

DIS0211
1201  LIBOR Addendum to Note                    1/01

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE PROMISSORY NOTE

LOAN NUMBER

PROPERTY ADDRESS

**145 BEACON HILL RD, MORGANVILLE, NEW JERSEY 07751**

**THIS ADDENDUM** is made this **2nd** day of **June** , **2004** , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to **LEHMAN BROTHERS BANK, FSB** (the Lender)

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note None of the other provisions of the Note are changed by this Addendum

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay interest by making payments every month for the first **120** payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues I will pay principal and interest by making payments every month thereafter for the next **240** payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments

I will make my monthly payments on the first day of each month beginning on **August 1 , 2004** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal If, on **July 1, 2034** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my payments at

**400 PROFESSIONAL DRIVE, SUITE 500, GAITHERSBURG, MD 20879** ,
or at a different place if required by the Note Holder

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U S $ **2,333.33** This payment amount is based on the original principal balance of the Note This payment amount may change

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 25 HUNDREDTHS** percentage point(s) ( **2.250** %) to the Current Index for such Change Date  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)   Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period   If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note  The result of this calculation will be the new amount of my monthly payment  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be **5.00** % of my overdue payment of interest during the Interest-Only Period, **5.00** % of my overdue payment of principal and interest thereafter   I will pay this late charge promptly but only once on each late payment

Dated **June 2, 2004**

Borrower **RITA IENCO-PLAZA**

Borrower



Return To  **AURORA LOAN SERVICES INC.**
**601 5TH AVENUE, P.O. BOX 4000**
**SCOTTSBLUFF, NE 69363**

Prepared By·  **WENDY WELTE**
**AURORA LOAN SERVICES**
**2530 S. PARKER ROAD, SUITE 601**
**AURORA, CO. 80014**

**ESCROW #:**
**LOAN #:**

—————————————— [Space Above This Line For Recording Data] ——————————————

# MORTGAGE

MIN

M CLAIRE FRENCH,CTY CLK
MONMOUTH COUNTY,NJ
INSTRUMENT NUMBER
200413571 3
RECORDED ON
Jun 23, 2004
5:51:49 PM
BOOK:OR-8374
PAGE:96
Total Pages: 26
COUNTY RECORDING    $280.00
FEES
TOTAL    $280.00

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) **"Security Instrument"** means this document, which is dated  **June 2, 2004**
together with all Riders to this document.
(B) **"Borrower"** is
**RITA IENCO-PLAZA**

Borrower is the mortgagor under this Security Instrument
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O. Box 2026, Flint, MI  48501-2026, tel  (888) 679-MERS

**NEW JERSEY** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**



VMP®-6A(NJ) (0005)
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291

**Form 3031 1/01**
Initials

**(D) "Lender"** is  **LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**

Lender is a    **Corporation**
organized and existing under the laws of    **UNITED STATES**
Lender's address is    **400 PROFESSIONAL DRIVE, SUITE 500, GAITHERSBURG, MD 20879**

**(E) "Note"** means the promissory note signed by Borrower and dated    **June 2, 2004**
The Note states that Borrower owes Lender

**FOUR HUNDRED FORTY EIGHT THOUSAND & 00/100**                                      Dollars
(U S $        **448,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    **July 1, 2034**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property "
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower The following
Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

**(L) "Escrow Items"** means those items that are described in Section 3

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C  Section 2601 et seq ) and its
implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA



**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the **County** of **Monmouth**

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

**All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.**

Property Account Number
**145 BEACON HILL RD**
**MORGANVILLE**
("Property Address")

which currently has the address of
[Street]
[City], New Jersey          **07751**          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property"  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

Initials _PLP_

-6A(NJ) (0005)          Page 3 of 15          **Form 3031 1/01**

## SCHEDULE A – ITEM NO. 4 - RIDER

Order No

Lot 25A In Block 26 as designated on a survey entitled "Plan of Proposed Subdivision, situated in Marlboro Township, Monmouth County, Prepared for Kathryn C. Collins", prepared by George T. Lucas, Engineer-Surveyor, 530 Hazel Avenue, Perth Amboy, New Jersey; Route 73, Morganville, New Jersey, Scale 1"=100' March 19, 1969.

Being further described as follows:

BEGINNING at a point marked by an existing monument in the northerly line of Beacon Hill Road, variable width, at the intersection of said line of Beacon Hill Road with the easterly line of lands now or formerly of Richard K, and Arlene J. Weinman as conveyed in Deed Book 5318 Page 364, and running thence

1) Along the aforementioned easterly line of lands now or formerly of Richard K. and Arlene J. Weinman, North 25 degrees 00 minutes West a distance of 385.54 feet to a point, thence
2) North 58 degrees 38 minutes East a distance of 235.00 feet to a point, thence
3) Parallel with the first courses herein, South 25 degrees 00 minutes East a distance of 508 26 feet to a point in the northerly line of Beacon Hill Road, thence
4) Along the northerly line of Beacon Hill Road, South 87 degrees 29 minutes West a distance of 252 76 feet to the herein described point or place of BEGINNING.

The above description is being drawn in accordance with a survey prepared by Troast Surveying Associates dated May 19, 2004.

FOR INFORMATIONAL PURPOSES ONLY: "In compliance with Chapter 157, Laws of 1977, premises herein is Lot(s) 39 in Block 132 on the Township of Marlboro Tax Map."

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **2nd** day of **June, 2004** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to

**LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at

**145 BEACON HILL RD, MORGANVILLE, NEW JERSEY 07751**
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument. building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property,
including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity,
gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus,
plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals,
washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods,
attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and
additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument
All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if
the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property "

**MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Initials _RDP_

Page 1 of 4                                                          **Form 3170 1/01**

**VMP®-57R** (0008)                     VMP MORTGAGE FORMS - (800)521-7291

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change  Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion  As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable  Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents  However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of default to Borrower (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument, (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

Initials

Form 3170 1/01

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant, (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument, (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower  However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs  Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender  This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider

_____ (Seal)                          _____ (Seal)
RITA IENCO-PLAZA                    -Borrower                                    -Borrower


_____ (Seal)                          _____ (Seal)
                    -Borrower                                    -Borrower


_____ (Seal)                          _____ (Seal)
                    -Borrower                                    -Borrower


_____ (Seal)                          _____ (Seal)
                    -Borrower                                    -Borrower


VMP-57R (0008)                    **Page 4 of 4**                    **Form 3170 1/01**

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **2nd** day of **June, 2004** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**LEHMAN BROTHERS BANK, FSB**

("Lender") of the same date and covering the property described in the Security Instrument and located at·
**145 BEACON HILL RD, MORGANVILLE, NEW JERSEY 07751**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows
## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of **6.250** %. The Note provides for changes in the interest rate and the monthly payments, as follows
## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of **July , 2014** , and on that day every **6th** month thereafter  Each date on which my interest rate could change is called a "Change Date "

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -Single Family-Fannie Mae Uniform Instrument**

**VMP®-838R** (0006)    Form 3138 1/01
Page 1 of 4    Initials
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is the average of interbank offered rates for six month U S  dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index "

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 25 HUNDREDTHS** percentage points ( **2.250** %) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.250** % or less than **2.250** %  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage points ( **2.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **12.250** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

Initials

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____ (Seal)                    _____ (Seal)
RITA IENCO-PLAZA                -Borrower                                    -Borrower


_____ (Seal)                    _____ (Seal)
                               -Borrower                                    -Borrower


_____ (Seal)                    _____ (Seal)
                               -Borrower                                    -Borrower


_____ (Seal)                    _____ (Seal)
                               -Borrower                                    -Borrower


VMP-838R (0006)                    Page 4 of 4                    Form 3138 1/01

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made    **June 2 , 2004**    and is incorporated into and deemed to
amend and supplement the Adjustable Rate Rider of the same date

The property covered by this addendum is described in the Security Instrument and located at
**145 BEACON HILL RD , MORGANVILLE , NEW JERSEY 07751**

### AMENDED PROVISIONS

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as
follows

### ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    **12.250**% or less than
**2.250**   %   Thereafter, my adjustable interest rate will never be increased or decreased on any single Change
Date by more than **TWO**                  percentage point(s) (   **2.000**        %) from the rate of interest I have been
paying for the preceding six (6) months   My interest rate will never be greater than                **12.250**      %   My
interest rate will never be less than        **2.250**      %

### TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the
Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests
transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the
transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural
person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may
require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be
exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period
of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all
sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender
may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

In Witness Thereof, Trustor has executed this addendum

Witness   DONALD L. MINASSIAN

Date   6-2-04

RITA IENCO-PLAZA

Date

Date

Date

Date

Date

Date

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER

PROPERTY ADDRESS  145 BEACON HILL RD
MORGANVILLE, NEW JERSEY 07751

THIS ADDENDUM is made this 2nd  day of June , 2004  and is incorporated
into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to
LEHMAN BROTHERS BANK, FSB, 400 PROFESSIONAL DRIVE, SUITE 500, GAITHERSBURG, MD 20879
(the Lender)
THIS ADDENDUM supersedes Section 4(C) of the Rider  None of the other provisions of the
Note are changed by this Addendum

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by
adding  2.25  percentage point(s) ( 2.25 %) to the Current Index for such
Change Date  The Note Holder will then round the result of this addition to the nearest one-
eighth of one percentage point (0 125%)  Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date

During the Interest-Only Period, the Note Holder will then determine the amount of
the monthly payment that would be sufficient to repay accrued interest  This will be the
amount of my monthly payment until the earlier of the next Change Date or the end of the
Interest-Only Period unless I make a voluntary prepayment of principal during such period  If I
make a voluntary prepayment of principal during the Interest-Only Period, my payment amount
for subsequent payments will be reduced to the amount necessary to pay interest at the then
current interest rate on the lower principal balance  At the end of the Interest-Only Period and
on each Change Date thereafter, the Note Holder will determine the amount of the monthly
payment that would be sufficient to repay in full the unpaid principal that I am expected to owe
at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly
payments over the remaining term of the Note  The result of this calculation will be the new
amount of my monthly payment  After the end of the Interest-Only Period, my payment
amount will not be reduced due to voluntary prepayments

Dated  6-2-04

RITA IENCO-PLAZA

Form 603F

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future  If Lender accepts such payments, it shall apply such payments at the time such payments are accepted  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for. (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment

Initials _RDP_



of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

Initials _RP_

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.



Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer")· (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys'



fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21· (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows·

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument  Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges  Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of·

DONALD L. MINASSIAN
ATTORNEY AT LAW OF NEW JERSEY

_____ (Seal)
RITA IENCO-PLAZA            -Borrower


_____      _____ (Seal)
                                                        -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                        -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                        -Borrower


_____ (Seal)   _____ (Seal)
                        -Borrower                        -Borrower

**STATE OF NEW JERSEY,** ~~Bergen~~ **County ss:**

On this ~~2~~ day of ~~June 2004~~ , before me, the subscriber, personally appeared

~~Rita Ienco-Plaza~~

who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed

_____
Notary Public

**DONALD L. MINASSIAN**
**ATTORNEY AT LAW OF NEW JERSEY**

Aurora

Recording Requested By
AURORA LOAN SERVICES

When Recorded Return To

Susan Lindhorst
AURORA LOAN SERVICES
P O Box 1706
Scottsbluff, NE  69363-1706

RSR

ZUCKER, GOLDBERG & ACKERMAN, LLC
ATTORNEYS AT LAW
200 SHEFFIELD STREET SUITE 301
MOUNTAINSIDE, N.J. 07092

931

NOV 2 4 2008

FC

### CORPORATE ASSIGNMENT OF MORTGAGE

Monmouth, New Jersey
SELLER'S SERVICING # ▮▮▮▮▮▮▮▮"IENCO PLAZA"

MERS # ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Date of Assignment  July 28th, 2008          *Nominee For Lehman Brothers BK, FSB
Assignor  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,* INC  at P O  BOX 2026, G4318 MILLER ROAD,
FLINT, MI  48501-2026
Assignee  AURORA LOAN SERVICES LLC at 2617 COLLEGE PARK, PO BOX 1706, SCOTTSBLUFF, NE  69361

Executed By  RITA IENCO- PLAZA  To  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC  AS
NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage  06/02/2004 Recorded  06/23/2004  in Book/Reel/Liber  OR-8374 Page/Folio  96 as Instrument
No  2004135713  In Monmouth,  New Jersey

Assessor's/Tax ID No  LOT(S) 39 IN BLK 132 ON TWNSHP OF MARLBORO TAX MAP

Property Address  145  BEACON HILL RD, MORGANVILLE, NJ  07751

    KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of
$448,000 00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due
or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein
contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial
interest under the Mortgage

    TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever,
subject to the terms contained in said Mortgage and Note

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC
On July 28th, 2008

By _____
JOANN REIN, Vice President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON July 28th, 2008, before me, DARLINE DIETZ, a Notary Public in and for the County of Scotts Bluff County, State
of Nebraska, personally appeared JOANN REIN, Vice President, personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument

WITNESS my hand and official seal,

_____
DARLINE DIETZ
Notary Expires  03/22/2010

GENERAL NOTARY-State of Nebraska
DARLINE DIETZ
My Comm Exp March 22, 2010

(This area for notarial seal)

TOTAL PAID
FEES
COUNTY RECORDING  $40.00
Total Pages: 1

PAGE = 2107
BOOK = OR-8748
Nov 26 = 33 = 33  AM
Nov 26, 2008
RECORDED ON
2008121174
INSTRUMENT NUMBER
MONMOUTH COUNTY,NJ
M CLAIRE FRENCH,CITY CLK

*AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

Recording Requested By:

When Recorded Return To:

_____

## CORPORATE ASSIGNMENT OF MORTGAGE

Monmouth, New Jersey
RE███████████ IENCO PLAZA
INVESTOR'S LOAN #: ████████

Date of Assignment: June 23rd, 2012
Assignor: AURORA BANK FSB at 2617 COLLEGE PARK, SCOTTSBLUFF, NE 69361
Assignee: NATIONSTAR MORTGAGE, LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 95067

Executed By: RITA IENCO-PLAZA To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage: 06/02/2004 Recorded: 06/23/2004 in Book/Reel/Liber: OR-8374 Page/Folio: 96 as Instrument
No.: 2004135713 In the County of Monmouth, State of New Jersey. In the amount of $4,480.00.

Assessor's/Tax ID ████████████████████

For value received, the said Assignor hereby assigns and transfers to Assignee all its right, title and interest in and
to said Mortgage.

AURORA BANK FSB
On ＼0・25-12           Effective Date: 07/01/2012

By: *Pamela J. Pederson*
PAMELA J. PEDERSEN, Vice-President

STATE OF Nebraska
COUNTY OF Scotts Bluff

ON ＼0・25-12___, before me, IRENE GUERRERO, a Notary Public in and for the County of Scotts Bluff
County, State of Nebraska, personally appeared PAMELA J. PEDERSEN, Vice-President, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity,
and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

*Irene Guerrero*
IRENE GUERRERO
Notary Expires: 09/14/2013

> GENERAL NOTARY - State of Nebraska
> IRENE GUERRERO
> My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

When Recorded Return To:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, AURORA LOAN SERVICES LLC, WHOSE ADDRESS IS 350 Highland Dr., Lewisville, TX, 75067, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF SARM 2004-16 TRUST FUND, WHOSE ADDRESS IS 9062 OLD ANNAPOLIS ROAD, COLUMBIA, MD 21045-1951.

Said Mortgage is dated on 06/02/2004, made by RITA IENCO-PLAZA to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, and recorded in Mortgage Book 8374, Page 96, and/or Instrument # ▮▮▮▮▮▮, in the office of the Register of Titles and County Recorder in MONMOUTH County, New Jersey.

Date: on 09 / 27 / 2013 (MM/DD/YYYY)
AURORA LOAN SERVICES LLC, by NATIONSTAR MORTGAGE LLC, its Attorney-in-Fact

By: _Susan Lindhorst_
        Susan Lindhorst
     ASST. SECRETARY

STATE OF NEBRASKA    COUNTY OF SCOTTS BLUFF
The foregoing instrument was acknowledged before me on 09/27 /2013 (MM/DD/YYYY), by Susan Lindhorst, as ASST. SECRETARY for NATIONSTAR MORTGAGE LLC as Attorney-in-Fact for AURORA LOAN SERVICES LLC , who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Linda D Parks_
Linda D Parks
Notary Public - State of NEBRASKA
Commission expires: 11-14-15

GENERAL NOTARY - State of Nebraska
LINDA D PARKS
My Comm. Exp. Nov. 14, 2015

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

BORR: IENCO PLAZA      LOAN #: ███████
Document:Assignment ()

FUND DATE ████████
07/01/12

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

## CORPORATE ASSIGNMENT OF MORTGAGE

**Monmouth, New Jersey**
**SELLER'S SERVICING** ████████ IENCO-PLAZA"

Date of Assignment: January 2nd, 2019
Assignor: WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF SARM 2004-16
TRUST FUND BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY IN FACT at  8950 CYPRESS WATERS BLVD,
COPPELL, TX  75019
Assignee: U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST V-B at 425
WALNUT STREET, CINCINNATI, OH  45202

Executed By: RITA IENCO-PLAZA  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
Date of Mortgage:  06/02/2004  Recorded:  06/23/2004  In Book/Reel/Liber: OR-8374 Page/Folio: 96 as Instrument
No.: 2004135713  In the County of Monmouth, State of New Jersey.

Property Address: 145 BEACON HILL RD, MORGANVILLE, NJ  07751

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $448,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF SARM 2004-16 TRUST FUND
BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY IN FACT
On <u>January 2nd, 2019</u>

By: _____
TSEDALE ALEMU, Vice-President

STATE OF Texas
COUNTY OF Dallas

On January 2nd, 2019, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas,
personally appeared TSEDALE ALEMU, Vice-President of WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE
CERTIFICATEHOLDERS OF SARM 2004-16 TRUST FUND , personally known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019  #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

| New Search | Assessment Postcard | Property Card |
| --- | --- | --- |

| | | | | |
| --- | --- | --- | --- | --- |
| Block: | 132 | Prop Loc: | 145 BEACON HILL ROAD | Owner: | PLAZA, RITA | Square Ft: | 2194 |
| Lot: | 39 | District: | 1330 MARLBORO | Street: | 145 BEACON HILL ROAD | Year Built: | 1973 |
| Qual: | | Class: | 2 | City State: | MORGANVILLE, NJ 07751 | Style: | 1 |

Additional Information

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| Prior Block: | 26 | Acct Num: | | Addl Lots: | | EPL Code: | 0 0 0 |
| Prior Lot: | 25.A | Mtg Acct: | 08000 | Land Desc: | 2.3AC | Statute: | |
| Prior Qual: | | Bank Code: | 660 | Bldg Desc: | 1S-F-R-2AG | Initial: | 000000 Further: 000000 |
| Updated: | 06/16/17 | Tax Codes: | F03 | Class4Cd: | 0 | Desc: | |
| Zone: | LC | Map Page: | 21 | Acreage: | 2.3 | Taxes: | 9600.16 / 9789.58 |

Sale Information

| | | | | |
| --- | --- | --- | --- | --- |
| Sale Date: | 06/02/04 | Book: | 8374 Page: 71 | Price: | 560000 | NU#: 0 |

| Sr1a | Date | Book | Page | Price | NU# | Ratio | Grantee |
| --- | --- | --- | --- | --- | --- | --- | --- |

TAX-LIST-HISTORY

| Year | Owner Information | Land/Imp/Tot | Exemption | Assessed | Property Class |
| --- | --- | --- | --- | --- | --- |
| 2019 | PLAZA, RITA | 241000 | 0 | 430500 | 2 |
| | 145 BEACON HILL ROAD | 189500 | | | |
| | MORGANVILLE, NJ 07751 | 430500 | | | |
| 2018 | PLAZA, RITA | 241000 | 0 | 430500 | 2 |
| | 145 BEACON HILL ROAD | 189500 | | | |
| | MORGANVILLE, NJ 07751 | 430500 | | | |
| 2017 | PLAZA, RITA | 241000 | 0 | 430500 | 2 |
| | 145 BEACON HILL ROAD | 189500 | | | |
| | MORGANVILLE, NJ 07751 | 430500 | | | |
| 2016 | PLAZA, RITA | 241000 | 0 | 430500 | 2 |
| | 145 BEACON HILL ROAD | 189500 | | | |
| | MORGANVILLE, NJ 07751 | 430500 | | | |

*Click on Underlined Year for Tax List Page

*Click Here for More History

Table of Equalized Valuation 2018

(Prior to Tax Court Appeals)

| | COUNTY AND DISTRICT | 1 AGG. ASSESSED VALUATION REAL PROP. * | 2 AVE. RATIO ASSESSED TO TRUE VALUE | 3 AGG. TRUE VALUE REAL PROP. * | 4 ASSESSED VALUE CLASS II R. R. PROPERTY | 5 ASSESSED VALUE ALL PERS. PROPERTY | 6 EQUALIZED VALUATION |
|---|---|---|---|---|---|---|---|
| | **MONMOUTH COUNTY** | | | | | | |
| 1301 | ABERDEEN TWP | 2,155,910,290 | 92.16 | 2,339,312,381 | | | 2,339,312,381 |
| 1302 | ALLENHURST BORO | 578,497,700 | 87.15 | 663,795,410 | | 223,489 | 664,018,899 |
| 1303 | ALLENTOWN BORO | 192,297,000 | 98.21 | 195,801,853 | | | 195,801,853 |
| 1304 | ASBURY PARK CITY | 1,637,788,300 | 93.86 | 1,744,926,806 | | | 1,744,926,806 |
| 1305 | ATLANTIC HIGHLANDS BORO | 895,777,900 | 99.55 | 899,827,122 | | 1,640,727 | 901,467,849 |
| 1306 | AVON BY THE SEA BORO | 921,002,500 | 88.77 | 1,037,515,489 | | | 1,037,515,489 |
| 1307 | BELMAR BORO | 1,683,434,200 | 92.61 | 1,817,767,196 | | | 1,817,767,196 |
| 1308 | BRADLEY BEACH BORO | 1,188,301,100 | 88.64 | 1,340,592,396 | | | 1,340,592,396 |
| 1309 | BRIELLE BORO | 1,530,792,800 | 99.00 | 1,546,255,354 | | | 1,546,255,354 |
| 1310 | COLTS NECK TWP | 3,021,200,000 | 98.22 | 3,075,951,945 | | 3,876,763 | 3,079,828,708 |
| 1311 | DEAL BORO | 2,152,851,500 | 81.80 | 2,631,847,800 | | 778,315 | 2,632,626,115 |
| 1312 | EATON TOWN BORO | 2,203,108,100 | 96.08 | 2,292,993,443 | | 7,064,920 | 2,300,058,363 |
| 1313 | ENGLISHTOWN BORO | 248,186,000 | 96.23 | 257,909,176 | | | 257,909,176 |
| 1314 | FAIRHAVEN BORO | 1,720,609,300 | 96.97 | 1,774,372,796 | | 450,480 | 1,774,823,276 |
| 1315 | FARMINGDALE BORO | 166,874,600 | 104.89 | 159,094,861 | | | 159,094,861 |
| 1316 | FREEHOLD BORO | 1,055,470,500 | 96.67 | 1,091,828,385 | | | 1,091,828,385 |
| 1317 | FREEHOLD TWP | 6,326,367,000 | 95.63 | 6,615,462,721 | | | 6,615,462,721 |
| 1318 | HAZLET TWP | 2,435,976,000 | 93.66 | 2,600,871,236 | | 1,631,921 | 2,602,503,157 |
| 1319 | HIGHLANDS BORO | 606,036,300 | 89.56 | 676,681,889 | | 301,259 | 676,983,148 |
| 1320 | HOLMDEL TWP | 4,213,968,200 | 98.79 | 4,265,581,739 | | 6,830,315 | 4,272,412,054 |
| 1321 | HOWELL TWP | 6,903,932,000 | 92.13 | 7,493,685,010 | | | 7,493,685,010 |
| 1322 | INTERLAKEN BORO | 261,908,500 | 86.68 | 302,155,630 | | 102,122 | 302,257,752 |
| 1323 | KEANSBURG BORO | 452,423,300 | 84.41 | 535,983,059 | | 424,972 | 536,408,031 |
| 1324 | KEYPORT BORO | 710,171,300 | 99.12 | 716,476,291 | | 4,364,000 | 720,840,291 |
| 1325 | LITTLE SILVER BORO | 1,687,350,500 | 95.50 | 1,766,859,162 | | 1,167,167 | 1,768,026,329 |
| 1326 | LOCH ARBOUR VILLAGE | 171,953,900 | 108.56 | 158,395,265 | | 68,951 | 158,464,216 |
| 1327 | LONG BRANCH CITY | 4,539,905,160 | 91.15 | 4,980,696,829 | | | 4,980,696,829 |
| 1328 | MANALAPAN TWP | 6,641,165,500 | 90.77 | 7,316,476,259 | | | 7,316,476,259 |
| 1329 | MANASQUAN BORO | 1,982,950,975 | 90.74 | 2,185,310,750 | | | 2,185,310,750 |

*EXCLUSIVE OF CLASS II RAILROAD PROPERTY

Table of Equalized Valuation 2018
(Prior to Tax Court Appeals)

| | COUNTY AND DISTRICT | 1 AGG. ASSESSED VALUATION REAL PROP. * | 2 AVE. RATIO ASSESSED TO TRUE VALUE | 3 AGG. TRUE VALUE REAL PROP. * | 4 ASSESSED VALUE CLASS II R. R. PROPERTY | 5 ASSESSED VALUE ALL PERS. PROPERTY | 6 EQUALIZED VALUATION |
|---|---|---|---|---|---|---|---|
| 1330 | MARLBORO TWP | 7,189,317,700 | 89.87 | 7,999,685,880 | | | 7,999,685,880 |
| 1331 | MATAWAN BORO | 1,085,431,500 | 97.01 | 1,118,886,197 | | | 1,118,886,197 |
| 1332 | MIDDLETOWN TWP | 10,851,465,700 | 97.79 | 11,096,702,833 | | 13,448,084 | 11,110,150,917 |
| 1333 | MILLSTONE TWP | 1,863,401,360 | 96.67 | 1,927,590,111 | | 6,485,366 | 1,934,075,477 |
| 1334 | MONMOUTH BEACH BORO | 1,465,914,900 | 95.81 | 1,530,022,858 | | | 1,530,022,858 |
| 1335 | NEPTUNE TWP | 3,906,392,700 | 94.00 | 4,155,736,915 | | | 4,155,736,915 |
| 1336 | NEPTUNE CITY BORO | 573,706,600 | 95.96 | 597,860,150 | | | 597,860,150 |
| 1337 | OCEAN TWP | 4,980,357,400 | 94.58 | 5,265,761,683 | | 4,022,459 | 5,269,784,142 |
| 1338 | OCEANPORT BORO | 1,296,265,900 | 103.23 | 1,255,706,578 | | 650,759 | 1,256,357,337 |
| 1339 | RED BANK BORO | 2,128,263,900 | 92.83 | 2,292,646,666 | | 7,916,257 | 2,300,562,923 |
| 1340 | ROOSEVELT BORO | 85,696,100 | 96.05 | 89,220,302 | | 118,113 | 89,338,415 |
| 1341 | RUMSON BORO | 3,574,982,600 | 97.27 | 3,675,318,803 | | 1,121,447 | 3,676,440,250 |
| 1342 | SEA BRIGHT BORO | 737,640,000 | 91.55 | 805,723,648 | | 476,674 | 806,200,322 |
| 1343 | SEA GIRT BORO | 2,451,198,800 | 95.98 | 2,553,864,138 | | | 2,553,864,138 |
| 1344 | SHREWSBURY BORO | 1,168,426,200 | 98.27 | 1,188,995,828 | | 1,120,813 | 1,190,116,641 |
| 1345 | SHREWSBURY TWP | 57,930,800 | 109.96 | 52,683,521 | | 409,645 | 53,093,166 |
| 1346 | LAKE COMO BORO | 411,608,600 | 99.03 | 415,640,311 | | | 415,640,311 |
| 1347 | SPRING LAKE BORO | 4,096,227,100 | 95.65 | 4,282,516,571 | | | 4,282,516,571 |
| 1348 | SPRING LAKE HEIGHTS BORO | 1,240,340,300 | 97.63 | 1,270,449,964 | | | 1,270,449,964 |
| 1349 | TINTON FALLS BORO | 3,182,355,200 | 94.03 | 3,384,404,126 | | 3,706,090 | 3,388,110,216 |
| 1350 | UNION BEACH BORO | 564,878,300 | 93.29 | 605,507,879 | | 502,593 | 606,010,472 |
| 1351 | UPPER FREEHOLD TWP | 1,250,287,700 | 96.84 | 1,291,086,018 | | | 1,291,086,018 |
| 1352 | WALL TWP | 5,962,882,400 | 94.34 | 6,320,630,061 | | 7,824,535 | 6,328,454,596 |
| 1353 | WEST LONG BRANCH BORO | 1,297,298,500 | 95.19 | 1,362,851,665 | | 680,770 | 1,363,532,435 |
| | | | | | | | |
| | TOTAL MONMOUTH COUNTY | 119,708,480,685 | 94.24 | 127,023,920,959 | 0 | 77,409,006 | 127,101,329,965 |
| | | | | | | | |

*EXCLUSIVE OF CLASS II RAILROAD PROPERTY